IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY CORDOVA,

        Plaintiff,

v.                                                            CIV 04-0862 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 8.* Plaintiff Mary Cordova asks this Court to reverse the Commissioner's decision that denied her application for Supplemental Security Income benefits, and also requests that this Court award her the benefits. Alternatively, she asks the Court to remand for further proceedings. *See Docs. 12, 13.*

      Having reviewed the pertinent portions of the record, I find that despite the protracted history of Plaintiff's application, this case must be remanded for further fact finding. As that is my sole reason for reversal, an outright award of benefits is not appropriate. *See, e.g., Williams v. Bowen,* 844 F.2d 748, 760 (10th Cir. 1988) ("Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose."). Accordingly, I will grant Plaintiff's motion in the alternative and remand the matter to the Commissioner yet again for further proceedings.

## I.  Background

Other than for a six-month period more than twenty years ago, Plaintiff has not been employed. Instead, Cordova is a homemaker who has raised a large family. She applied for Supplemental Security Income benefits in 1994, alleging that she became disabled by agoraphobia beginning in 1990. *E.g., Administrative Record* at 342, 344, 123, 153.

***Proceedings Before ALJ Connor.***  After Plaintiff failed to appear at the first scheduled hearing, Administrative Law Judge ("ALJ") Carol A. Connor issued an unfavorable decision in 1995. The Appeals Council remanded. When Plaintiff failed to appear at the subsequently scheduled hearing, ALJ Connor again issued an unfavorable decision in 1997. Yet again the Appeals Council remanded, this time assigning the matter to another ALJ. *See, e.g., id.* at 203-04, 215-16, 274-87, 298-99.

***Proceedings Before ALJ Keohane.***  In 2000, Plaintiff appeared and testified by telephone at a hearing before ALJ Paul J. Keohane. He also issued an unfavorable decision, finding that: Plaintiff's "severe" mental impairments of borderline intellect, panic, depressive, and dependent personality disorders do not meet the Listings; her allegations of disabling anxiety leaving her unable to function outside of town were not credible; and Plaintiff has the capacity to perform simple unskilled work at any exertional level. *See id.* at 15-21.

The cornerstones to ALJ Keohane's credibility and residual functional capacity conclusions were his observations that with treatment, Plaintiff's agoraphobia "could be expected to be alleviated," but Plaintiff had repeatedly failed to cooperate with planned treatment and

refused to continue any sort of treatment or medication regimen. *Id.* at 18.[1]   ALJ Keohane emphasized Plaintiff's ability to take care of herself, her children, and her home.  He concluded that "[e]ven without treatment . . . her agoraphobia is stable in that she is obviously able to function in the Belen area, as opposed to a shrinking area such as only her home." *Id.* at 18-20.[2] Thus, despite his observations about treatment, it seems that ALJ Keohane did not base his decision to deny benefits on the ground that Plaintiff failed to follow prescribed treatment. Rather, he determined that the Grids directed a finding of not disabled.  *See id.* at 20.

     ***First Appeal To This Court Results In Agreed Remand.***   After the Appeals Council declined review of ALJ Keohane's decision, Plaintiff filed an appeal with this court.  *See Cordova v. Barnhart,* CIV 01-1255 MV/RLP.  Chief District Judge Martha Vázquez did not reach the merits of any issues, because the parties negotiated a remand.

     Although the parties agreed to the need for a remand, they did not entirely agree on its scope.  The Commissioner's motion to remand sought remand only as to the areas where the parties agreed.  That is, the Court should remand with instruction to have the ALJ reevaluate and discuss in writing three issues: (1) any applicable Listings impairments; (2) Plaintiff's mental

---

[1] *See also id.* at 19 ("Treating sources have indicated that the claimant would benefit from traditional treatment modalities, and they have repeatedly so advised the claimant.  She ignores these exhortations.  Even when a treating source is prepared to treat the claimant at home, she does not bother to be there.  She is not compliant with treatment.").

[2] Specifically, he found that Plaintiff "is not alone; she is not hiding under her bed while at home; concerned relatives do not call medical personnel to her home; and she has not required crisis intervention. Rather, the claimant retains the mental capacity to not only care for herself, but for others as well," and that "she raises four children, of young age and does it well.  She visits family and friends, shops, and does household work.  She takes her children to the park and school.  She is described as a very good and attentive mother.  She has no physical impairments or limits."  *Id.* at 19-20.  He concluded that Plaintiff "is simply content with her situation in Belen and refuses reasonable treatment so that the same lifestyle can be maintained.  As laudable as such a lifestyle is, it can hardly serve as a basis to allow benefits."  *Id.*

residual functional capacity; and (3) favorable treating physician opinions that were discounted. Additionally, the parties had agreed that the remand should require the ALJ to call a vocational expert to testify.  *See id.* at Doc. 17.

Plaintiff, on the other hand, also wanted the Court to order a reassessment of Plaintiff's "credibility, and her compliance with prescribed treatment." *Id*. at Doc. 18.  Cordova feared that without a required reassessment of these two issues, the ALJ could ignore the other areas identified for remand and simply "enter a decision using the ***same*** findings of noncompliance, and the ***same*** finding that [Plaintiff's] assertions that she can not work are not credible." *Id.* (emphasis added).

Chief Judge Vázquez initially entered an order of remand that outlined only the areas the parties agreed upon.  Within a month, however, she amended the prior order to specifically reflect that the ALJ should evaluate and discuss in writing Plaintiff's credibility and compliance with prescribed treatment.  *See id.* (Docs. 20-22).

***The Administration Does Not Have The Court's Amended Order Of Remand.***  The Court's Amended Order Of Remand was filed November 8, 2002 thereby predating the Appeals Council's remand order by almost two months.  Yet the Administrative Record contains only Judge Vázquez' original order of remand.  *See Record* at 368-71.  Thus, the Appeals Council did not direct the ALJ to perform a new assessment of Plaintiff's credibility and any alleged failure to follow prescribed treatment.  *Id.* at 370.  The Appeals Council order did indicate, however, that Plaintiff was awarded benefits in March 2001, and added that "information submitted with this subsequent claim should be considered." *Id.*  There is no explanation why the Appeals Council and ALJ David R. Wurm, to whom the matter was assigned, were not made aware of Judge

Vázquez' amendment to the order of remand.

***Proceedings Before ALJ Wurm.*** ALJ Wurm held a hearing at which Plaintiff "attended" and testified by telephone. *See id.* at 381-94. In summary fashion without a discussion of the medical evidence, he determined that Plaintiff had mental impairments based on a 1995 evaluation and unidentified Appeals Council documents. *See id.* at 354 (citing "Exhibit 24/6 and 7," found *id.* at 253-59, and "AC4/2 and 4"). ALJ Wurm based his decision to deny benefits solely on Plaintiff's failure to follow prescribed treatment in contravention of 20 C.F.R. § 416.930.[3]

His entire reasoning provides that:

> the claimant has relatively full activities of daily living – caring for her 5 children ages 17, 16, 9, 8, and 5, attending church, driving to the grocery store and shopping for groceries, and driving her children to and from school – despite her lack of medical treatment. There are notable inconsistencies regarding the scope of her 'comfort zone' over the years, which affect her credibility. For example, she delivered her last child at a hospital in Albuquerque rather than at her home as she did with previous births.[4]
>
> Furthermore, earlier treatment sources report that treatment helped and that her function was increasing, but she has refused to take medications, refused or failed to attend group treatment despite recommendations that she do so, and refused to help herself. As noted by the previous ALJ in his unfavorable decision, the claimant appears to have chosen to live her life in a relatively small world. Moreover, the main aspect to her agoraphobia seems to be avoidance of treatment rather than avoidance of social contact.
>
> The undersigned also notes that none of the acceptable reasons for failure to follow prescribed treatment given in 20 CFR 416.930 are

---

[3] That regulation requires claimants to "follow treatment prescribed by your physician if this treatment can restore your ability to work" in order to receive benefits and will "consider your . . . mental . . . limitations when determining if you have an acceptable reason for failure to follow prescribed treatment."

[4] As discussed later, this statement is inaccurate.

>       present in this case. The claimant has not established any religious
>       objection, danger to her eyesight, risk from major treatment or
>       unusual treatment, or need for surgery or amputation.

*Id.* at 354-56.[5]

## II. Analysis

In essence, ALJ Wurm concluded that because Plaintiff can engage in considerable daily activities in and near her home, she is not credible in her assertion that her agoraphobia is totally disabling. It appears that he then deemed any asserted mental limitations as a reason for failing to follow prescribed treatment to likewise be not credible and therefore unacceptable. From the way the opinion is written, however, I cannot conclude that this logic is based on a review of the record for the period at issue. Rather, ALJ Wurm's findings simply mirror ALJ Keohane's conclusions without the same discussion of the evidence.

Thus, what Plaintiff feared would happen did happen – ALJ Wurm used ALJ Keohane's findings rather than conducting his own review of the relevant evidence when he decided to deny benefits based on a failure to follow prescribed treatment without good reason. It should be remembered, however, that ALJ Keohane did ***not*** deny benefits on that ground. In fact, Plaintiff

---

[5] Following ALJ Wurm's decision, Plaintiff filed the instant appeal, evidently bypassing the Appeals Council. Nevertheless, the Commissioner's Answer admits that Plaintiff exhausted her administrative remedies. *See Doc. 1,* ¶ 3; *Doc. 9,* ¶ 1. The agreed remand in her prior appeal to this Court was pursuant to "sentence four." *See Cordova v. Barnhart,* CIV 01-1255 MV/RLP (*see* Doc. 22). Thus, the prior appeal concluded in its entirety, without this Court retaining jurisdiction to review the subsequent proceedings. *See, e.g., Shalala v. Schaefer,* 509 U.S. 292, 297 (1993) ("Immediate entry of judgment (as opposed to entry of judgment after postremand agency proceedings have been completed and their results filed with the court) is in fact the principal feature that distinguishes a sentence-four remand from a sentence-six remand."); *compare Tower v. Barnhart,* 89 Fed. Appx. 186 (10th Cir. 2004) (remand order without discussion of merits entered on motion Commissioner filed after the answer, cannot be made under sentence four); *Huff v. Apfel,* 2000 WL 1022270 (10th Cir. 2000) (remand on Commissioner's request after answer filed without discussion of merits and without retaining jurisdiction is neither a proper sentence four nor sentence six remand).

secured the amended remand order from Judge Vázquez precisely to avoid such a result.[6]

Cordova asserts that the credibility and compliance with treatment findings are not supported by substantial evidence. *See Doc. 13.* For instance, ALJ Wurm referred to "notable inconsistencies regarding the scope of her 'comfort zone' over the years, which affect her credibility." *Record* at 354. Yet even the minimal evidence relied upon by ALJ Wurm in making this observation appears to be in error.

Contrary to the ALJ's assertion, Plaintiff had not delivered her last child at a hospital in Albuquerque rather than at home as with previous births. Instead, the record reflects that Cordova encountered severe problems associated with the out-of-town hospitalization for the birth of her third child in about 1995. Based upon that traumatic experience, Plaintiff gave birth to her last two children at home with the assistance of a mid-wife. Plainly, the ALJ's significant reliance on the misinformation is problematic given the brevity of his credibility finding.[7]

---

[6] The amended remand order directed the ALJ to consider: (a) all of the applicable listed impairments; (b) Cordova's mental RFC; (c) the doctors' opinions that are favorable to Cordova that were discounted; (d) vocational expert testimony; (e) an evaluation and written discussion of Cordova's credibility; and (f) an evaluation and written discussion of Cordova's compliance with prescribed treatment. *Doc. 13* at 3. While Plaintiff faults him for violating the credibility and compliance sections of the order, she makes no mention of his failure to make all of the other findings the order required. *See id.*

I have found one decision holding that failure to address something ordered on remand violates the "law of the case" and itself requires remand. *See Sayles v. Barnhart,* 2004 WL 3008739 at *21 (N.D. Ill. 2004). This decision is not binding, and I have not found any binding authority that holds the same. If Plaintiff is arguing that violation of any part of the Court's amended remand order automatically requires reversal, I decline to do so. Plaintiff only seeks to enforce certain portions of the remand order. Furthermore, I am not persuaded that ALJ Wurm's failure to follow every step of the terms of the remand itself warrants further proceedings because he focused on what he believed to be "dispositive."

[7] First, ALJ Wurm appears to have considered Plaintiff's daily activities from her testimony, which centered around what she was doing in 2004, some three years after a finding that she was disabled. His inquiry, however, was for the period from "October 11, 1994 to March 12, 2001. Since ALJ Wurm did not cite the record sources for his conclusion, however, this observation is sheer speculation on my part. *See Record* at 353, 354, 381-95. Second, ALJ Wurm's statement about the hospital birth fails to even mention Plaintiff's testimony that her agoraphobia caused major difficulties throughout her Albuquerque

Defendant essentially counters that the credibility finding can be overlooked, because it was "not a major factor in this case." *See Doc. 14* at 6. I disagree, however, and feel that yet another remand is warranted. The heart of the matter lies with Plaintiff's argument that ALJ Wurm failed to adequately analyze or explain the basis for his findings. She cites portions of the medical records and testimony that support her positions on the issue of credibility and alleged failure to pursue treatment. *E.g., Docs. 13, 15.* In contrast, the Commissioner also cites the portions of the medical records and testimony that could support of the ALJ's ultimate conclusion about failure to follow prescribed treatment. *See Doc. 14.*

The problem is that the parties are asking me to review the record and evaluate the evidence. My review and decision, however, cannot be based on reweighing the evidence, or substituting my judgment for that of the agency, or making credibility determinations. *E.g., Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004). That is precisely what I would have to do in determining which party has the better argument, since ALJ Wurm did not discuss any of the medical evidence or testimony in a meaningful way, nor how he viewed it in arriving at his decision. Thus, this matter is not the "exceptional circumstance" where it would be suitable for a "harmless error" analysis based on my own review of the record.[8]

---

hospitalization because she was out of her "safety zone" and required constant companionship while there. *Id.* at 389.

[8] *See, e.g., Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("Claimant also correctly argues that the magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."); *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir. 2004) ("a court acting within the confines of its administrative review authority, we are empowered only to 'review the ALJ's decision for substantial evidence' and, accordingly, 'we are

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 12)* is granted in part, and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

                                      */s/ Karen B. Molzen*
                              UNITED STATES MAGISTRATE JUDGE
                              Presiding by consent.

---

not in a position to draw factual conclusions on behalf of the ALJ.' . . . to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery* . . . and its progeny. With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, *i.e.,* where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").